**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Patrick Evans, individually on behalf of himself and all others similarly situated, | x : : : Case No. : |
| Plaintiffs, | : : |
| v. | : : : |
| Olivina Napa Valley LLC, | : **CLASS ACTION COMPLAINT** : : **JURY TRIAL DEMANDED** |
| Defendant. | : : : : : x |

Plaintiff, Patrick Evans (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.      This action seeks to remedy the deceptive and misleading business practices of Olivina Napa Valley LLC (hereinafter "Defendant") with respect to the marketing and sales of the following Olivina Men products (hereinafter the "Products") throughout the State of New York and throughout the country:

- Olivina Men All-In-One Body Wash Bourbon Cedar

- Olivina Men Rinse Out │ Leave In Conditioning Cream

- Olivina Men Bourbon Cedar Aluminum-Free Deodorant

2.      Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign centered around claims that appeal to health conscious consumers, i.e., that

1

its Products are "Naturally Pure." This representation leads consumers to believe that the product contains natural ingredients. However, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products contain synthetic ingredients.

3. Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are "Naturally Pure" when purchasing the Products. Defendant's website even touts the products as "Natural Grooming For Men Who Care." Plaintiff and Class Members paid a premium for the Products over and above comparable products that did not purport to be "Naturally Pure." Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are "Naturally Pure" Plaintiff and Class Members suffered an injury in the amount of the premium paid.

4. Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, the consumer protection statutes of all 50 states, and the Magnuson-Moss Warranty Act. Defendant breached and continues to breach its express and implied warranties regarding the Products. Defendant has been and continues to be unjustly enriched. Accordingly, Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

5. Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products. Companies such as the Defendant have capitalized on consumers' desires for purportedly "natural products." Indeed, consumers are willing to pay, and have paid, a

premium for products branded "natural" over products that contain synthetic ingredients. In 2015, sales of natural products grew 9.5% to $180 billion.[1] Reasonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

6. Despite the Products containing a number of synthetic ingredients, Defendant markets the Products as being "Naturally Pure." The Products' labeling is depicted below:

---

[1] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ,* FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also* Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products,* INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NTWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017.



**Synthetic Ingredients:**

Decyl Glucoside
Cocamidopropyl Betaine
Panthenol
Glycerin
Potassium Sorbate
Citric Acid

4



Synthetic Ingredients:

Cetearyl Alcohol
Glycerin
Panthenol
Tocopherol
Citric Acid
Potassium Sorbate
Sodium Benzoate



**Synthetic Ingredients:**

Propanediol
Sodium Chloride
Cetyl Alcohol
Glycerin

7.    Defendant's representations that the Products are "Naturally Pure" is false, misleading, and deceptive because the Products contain multiple ingredients that are, as explained below, synthetic.

a.  **Potassium Sorbate** is a synthetic preservative.[2] *See* 21 C.F.R. § 582.3640.  It is created by using potassium hydroxide (KOH) to neutralize sorbic acid (C6H8O2). The resulting potassium sorbate may be crystallized from aqueous ethanol. Studies have shown Potassium Sorbate to have genotoxic effects on humans and other mammals.[3]  It causes chromosomal aberrations in cells, which can trigger the development of cancer.[4]

b.  **Tocopherol** is a synthetic, inert ingredient used pre and post-harvest as an ingredient in pesticide formulations applied to growing crops or to raw agricultural commodities after harvest. *See* 40 C.F.R. §180.910.

c.  **Cocamidopropyl Betaine (Coco Betaine)** is a synthetic surfactant.[5]

d.  **Decyl Glucoside** is a synthetic ingredient obtained by the condensation of decyl alcohol and glucose. [6]

e.  **Cetyl/Cetearyl Alcohol** is a synthetic flavoring substance and adjuvant. *See* 21 C.F.R. §172.515.

f.  **Sodium Chloride** is a synthetic and hazardous chemical substance. [7]

---

[2] http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm274535.htm.
[3] Sevcan Mamur et al., *Does Potassium Sorbate Induce Genotoxic or Mutagenic Effects in Lymphocytes?*, TOXICOLOGY IN VITRO 790, 793 (2010).
[4] *Id.*
[5] http://www.fda.gov/downloads/CombinationProducts/JurisdictionalInformation/RFDJurisdictionalDecisions/RedactedDecisionLetters/UCM113805.pdf
[6] http://www.newdirections.com.au/articles/images/Decyl-Glucoside-and-Other-Alkyl-Glucosides-as-Used-in-Cosmetics.pdf
[7] https://whatsinproducts.com/files/brands_pdf/1391295214.pdf

**g. Propylene Glycol also known as Propanediol** (1,2-propanediol) does not occur in nature. Instead Propylene Glycol is manufactured by treating propylene with chlorinated water to form the chlorohydrin which is converted to the glycol by treatment with sodium carbonate solution. It is also prepared by heating glycerol with sodium hydroxide. *See* 21 C.F.R. §184.1666.

**h. Panthenol** is a synthetic compound, produced by adding propanolamine to optically active alpha, gamma-dihydroxy-beta, beta-dimethylbutyrolacton, such as by combining 3-amino-1-propanolamine with the lactone of 2,4-dihydroxy-3,3-dimethyl butyric acid or the panthotheinc lactone of 2,4-dihydroxy-3,3-dimethyl butyric acid.

**i. Citric Acid** is (2-hydroxy-propane-1, 2,3-tricarboxylic acid) is a synthetic substance. While the chemical's name has the word "citric" in it, citric acid is no longer extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutant strains of the black mold fungus, *Aspergillus niger.*

**j. Sodium benzoate** is a synthetic preservative.[8] Sodium benzoate is produced by the neutralization of benzoic acid with sodium hydroxide, or by adding benzoic acid to a hot concentrated solution of sodium carbonate until effervescence ceases. The solution is then evaporated, cooled and allowed to crystalize or evaporate to dryness, and then granulated. It does not occur naturally.[9] Sodium benzoate has

---

[8] http://www.ewg.org/skindeep/ingredient/705989/SODIUM_BENZOATE/;
http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm274535.htm.
[9] 21 C.F.R. § 184.1733.

been shown to cause DNA damage and chromosomal aberrations.[10]  When sodium benzoate combines with ascorbic acid (an ingredient common in many food products) the two substances can react to produce benzene, which is a highly toxic carcinogen.

**k.  Glycerin (Vegetable)** is a factory-produced texturizer that is created by complex processing.  It is recognized by federal regulations as synthetic.  *See* 7 C.F.R. § 205.605(b).  It is commonly used as a filler and thickening agent.  It requires multiple processing steps in an industrial environment to create Glycerin.  Therefore, it cannot be described as "natural."  A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA National Organic Program explains that Glycerin is "produced by a hydrolysis of fats and oils" and is listed in the USDA Organic Program's National List as a "synthetic nonagricultural (nonorganic) substance."  The same report lists several methods of producing Glycerin, each of which involve numerous steps that include the use of high temperatures and pressure and purification to get an end product.

| Table 2 Processes for producing glycerin by hydrolysis of fats and oils[11] | |
|---|---|
| Lemmens Fryer's Process | Oil or fat is subjected in an autoclave to the conjoint action of heat and pressure (about 100 PSI) in the presence of an emulsifying and accelerating agent, e.g. zinc oxide or hydroxide (sodium hydroxide can be substituted) for about eight hours. The strong solution of glycerin formed is withdrawn and replaced by a quantity of hot, clean and preferably distilled water equal to about one third to one fourth of the weight of the original charge of oil or fat and treatment continued for an additional four hours. The dilute glycerin |

---

[10] N. Zengin et al., *The Evaluation of the Genotoxicity of Two Food Preservatives: Sodium Benzoate and Potassium Benzoate*, FOOD AND CHEMICAL TOXICOLOGY 763, 764-68 (2011).

[11] https://www.ams.usda.gov/sites/default/files/media/Glycerin%20Petition%20to%20remove%20TR%202013.pdf

| | |
|---|---|
| | obtained from the latter part of the process is drawn off and used for the initial treatment of the further charge of oil or fat. |
| Budde and Robertson's Process | The oils or fats are heated and mechanically agitated with water and sulphuric acid gas, under pressure in a closed vessel or autoclave. The advantage claimed for the process are that the contents of the vessel are free from foreign matter introduced by reagents and need no purification; that the liberated glycerin is in the form of a pure and concentrated solution; that no permanent emulsion is formed and that the fatty acids are not discolored. |
| Ittner's Process | Coconut oil is kept in an autoclave in the presence of water at 70 atmospheres pressure and 225-245oC temperature and split into fatty acids and glycerin, both being soluble under these conditions in water. The glycerin solution separates in the bottom of the autoclave. The aqueous solution contains at the end of the splitting process more than 30 percent glycerin. |
| Continuous High Pressure Hydrolysis | In this process a constant flow of fat is maintained flowing upward through an autoclave column tower against a downward counterflow of water at a pressure of 600 PSI maintained at temperature of 480-495oF. Under these conditions, the fat is almost completely miscible in water and the hydrolysis take place in a very short time. The liberated fatty acids, washed free of glycerin by the downward percolating water, leave the top of the column and pass through a flash tank while the liberated glycerin dissolves in the downward flow of water and is discharged from the bottom of the tower into the sweet-water storage tank. |

8.      Whether Defendant's labeling of the Products as "Naturally Pure" is deceptive is judged by whether it would deceive or mislead a reasonable person. To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance.

9.      In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural).  In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is

manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter. **(Exhibit A).**

10.     Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . . ." 7 U.S.C. § 6502 (21).

11.     Surveys and other market research, including expert testimony Plaintiff intends to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer because the reasonable consumer believes that the term "natural," when used to describe goods such as the Products, means that the goods are free of synthetic ingredients.

12.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

13.     Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer. That is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

11

14. Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent front-of-the-Products claims, representations, and warranties that the Products are "Naturally Pure."

15. Defendant did not disclose that the above listed ingredients are synthetic ingredients. A reasonable consumer understands Defendant's "Naturally Pure" claims to mean that the Products are "Naturally Pure" and do not contain synthetic ingredients.

16. Defendant has thus violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article, which to its knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

17. Consumers rely on label representations and information in making purchasing decisions.

18. The marketing of the Products as "Naturally Pure" in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendant's awareness that "Naturally Pure" claims are material to consumers.

19. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

20.     Plaintiff and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

21.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class members.

22.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled "Naturally Pure" over comparable products not so labeled.

23.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class members in that they:

    a.  Paid a sum of money for Products that were not what Defendant represented;

    b.  Paid a premium price for Products that were not what Defendant represented;

    c.  Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

    d.  Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

24.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class members would not have been willing to purchase the Products.

25.     Plaintiff and the Class members paid for Products that were "Naturally Pure" but received Products that were not "Naturally Pure." The Products Plaintiff and the Class members received were worth less than the Products for which they paid.

26.     Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing a "Naturally Pure" label.

27.     Plaintiff and the Class members all paid money for the Products. However, Plaintiff and the Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of New York and Defendant Olivina Napa Valley LLC is a citizen of the State of Tennessee; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

29.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

30. Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the State of New York. A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

## PARTIES

### Plaintiff

31. Plaintiff is an individual consumer who, at all times material hereto, was a citizen of Bronx, New York. During the Class Period Plaintiff purchased the Products via online and/or from a retail store in New York State. The packaging of the Products Plaintiff purchased contained the representation that they were "Naturally Pure." Plaintiff believed that this representation meant that the Products did not contain synthetic ingredients. Plaintiff believes a synthetic ingredient is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources. If the Products were actually "Naturally Pure", as represented on the Products' label, Plaintiff would purchase the Products in the immediate future.

32. Had Defendant not made the false, misleading, and deceptive representation that the Products were "Naturally Pure" Plaintiff would not have been willing to pay the same amount for the Products, and, consequently, he would not have been willing to purchase the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products. The Products Plaintiff received were worth less than the Products for which he paid. Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

33.     Defendant Olivina Napa Valley LLC is a corporation with its principal place of business in Franklin, Tennessee. Defendant manufactures, markets, advertises and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Products.

## CLASS ALLEGATIONS

34.     Plaintiff brings this matter on behalf of himself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

35.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

36.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of New York at any time during the Class Period (the "New York Subclass").

37.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

38.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

39.     Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

40.     Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

      a.   Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

      b.   Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

      c.   Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Products;

      d.   Whether Defendant's false and misleading statements concerning its Products were likely to deceive the public;

      e.   Whether Plaintiff and the Class are entitled to injunctive relief;

      f.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

41.     Typicality: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

42.    Adequacy: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent; his consumer fraud claims are common to all members of the Class and he has a strong interest in vindicating his rights; he has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.

43.    Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

44.    Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

    c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less

burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase its Products as being "Naturally Pure."

45.  Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

46.  Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendant has engaged in conduct resulting in misleading

consumers about ingredients in its Products. Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct. Plaintiff would purchase the Products again if the ingredients were changed so that they indeed were "Naturally Pure" and did not contain synthetic ingredients.

47.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

    a.   <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly impracticable. Defendant's Products have been purchased by thousands of people throughout the United States;

    b.   <u>Commonality</u>: Questions of law and fact are common to members of the Class. Defendant's misconduct was uniformly directed at all consumers. Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction. Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class. Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

        i.   Resolution of the issues presented in the 23(b)(3) class;

        ii.   Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and labeling; and

iii. Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively mislabel its Products as being "Naturally Pure."

c. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because his claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices). Plaintiff is a typical representative of the Class because, like all members of the injunctive Class, he purchased Defendant's Products which were sold unfairly and deceptively to consumers throughout the United States.

d. <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class. His consumer protection claims are common to all members of the injunctive Class and he has a strong interest in vindicating his rights. In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

48. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed its Products using the same misleading and deceptive labeling to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to

consumers the nature of the contents of its Products. Plaintiff would purchase the Products again if the ingredients were changed so that they indeed were "Naturally Pure."

## FIRST CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 349
### (On Behalf of Plaintiff and New York Subclass Members)

49.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

50.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

51.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Products.

52.     There is no adequate remedy at law.

53.     Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

54.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being "Naturally Pure" —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant

made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

55.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendant's representations— not "Naturally Pure" and contained synthetic ingredients.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

56.     Defendant's advertising and Products' packaging and labeling induced the Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

57.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

58.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and the New York Subclass Members)

59.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

60.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

61.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

62.    Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products are "Naturally Pure."

63.    Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Products which were—contrary to Defendant's representations—not "Naturally Pure." Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

64.    Defendant's advertising, packaging and products' labeling induced the Plaintiff and the New York Subclass Members to buy Defendant's Products.

65.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

66.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

24

67.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Products' packaging and labeling.

68.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

69.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION
## VIOLATION OF STATE CONSUMER PROTECTION STATUTES
### (On Behalf of Plaintiff and All Class Members)

70.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

71.     Plaintiff and Class Members have been injured as a result of Defendant's violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiff and Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

72.     Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

a.     **Alaska:** Defendant's practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.   **Arizona:** Defendant's practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.*

c.   **Arkansas:** Defendant's practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

d.   **California:** Defendant's practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq.*, and California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq.*, and California's False Advertising Law, California Business and Professions Code § 17500, *et seq.*

e.   **Colorado:** Defendant's practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f.   **Connecticut:** Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

g.   **Delaware:** Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.   **District of Columbia:** Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i.   **Florida:** Defendant's practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j. **Hawaii:** Defendant's practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

k. **Idaho:** Defendant's practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l. **Illinois:** Defendant's acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m. **Indiana:** Defendant's practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n. **Kansas:** Defendant's practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

o. **Kentucky:** Defendant's practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p. **Maine:** Defendant's practices were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* and 10 Me. Rev. Stat. Ann. § 1101, *et seq.*

q. **Maryland:** Defendant's practices were and are in violation of Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

r. **Massachusetts:** Defendant's practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

s.   **Michigan:**  Defendant's practices were and are in violation of Michigan's

Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

t.   **Minnesota:**  Defendant's practices were and are in violation of Minnesota's

Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the

Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u.   **Missouri:**  Defendant's practices were and are in violation of Missouri's

Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

v.   **Nebraska:**  Defendant's practices were and are in violation of Nebraska's

Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform

Deceptive Trade Practices Act, § 87-302, *et seq.*

w.   **Nevada:**  Defendant's practices were and are in violation of Nevada's Deceptive

Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.   **New Hampshire:**  Defendant's practices were and are in violation of New

Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev.

Stat. Ann. § 358-A:1, *et seq.*

y.   **New Jersey:**  Defendant's practices were and are in violation of New Jersey's

Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.   **New Mexico:**  Defendant's practices were and are in violation of New Mexico's

Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa.   **North Carolina:**  Defendant's practices were and are in violation of North

Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et*

*seq.*

bb. **North Dakota:** Defendant's practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

cc. **Ohio:** Defendant's practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

dd. **Oklahoma:** Defendant's practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ee. **Oregon:** Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

ff. **Pennsylvania:** Defendant's practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*

gg. **Rhode Island:** Defendant's practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

hh. **South Dakota:** Defendant's practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

ii. **Texas:** Defendant's practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

jj. **Utah:** Defendant's practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

kk. **Vermont:** Defendant's practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

ll. **Washington:** Defendant's practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

mm. **West Virginia:** Defendant's practices were and are in violation of West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq.*

nn. **Wisconsin:** Defendant's practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

oo. **Wyoming:** Defendant's practices were and are in violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101, *et seq.*

73.     Defendant violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the Products are "Naturally Pure."

74.     Contrary to Defendant's representations, the Products are not "Naturally Pure."

75.     Defendant's misrepresentations were material to Plaintiff's and Class Members' decision to pay a premium for the Products.

76.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

77.     As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members paid a premium for the Products.

78.     As a result of Defendant's violations, Defendant has been unjustly enriched.

79.     Pursuant to the aforementioned states' unfair and deceptive practices laws,

Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive

and special damages including but not limited to treble damages, reasonable attorneys' fees and

costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the

relevant law.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY
### (On Behalf of Plaintiff and All Class Members)

80.     Plaintiff repeats and realleges each and every allegation contained in the foregoing

paragraphs as if fully set forth herein.

81.     Defendant provided the Plaintiff and Class Members with an express warranty in

the form of written affirmations of fact promising and representing that the Products are

"Naturally Pure."

82.     The above affirmations of fact were not couched as "belief" or "opinion," and were

not "generalized statements of quality not capable of proof or disproof."

83.     These affirmations of fact became part of the basis for the bargain and were

material to the Plaintiff's and Class Members' transactions.

84.     Plaintiff and Class Members reasonably relied upon the Defendant's affirmations

of fact and justifiably acted in ignorance of the material facts omitted or concealed when they

decided to buy Defendant's Products.

85.     Within a reasonable time after he knew or should have known of Defendant's breach, Plaintiff, on behalf of himself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which it refused to do.

86.     Defendant breached the express warranty because the Products are not "Naturally Pure" because they contain synthetic ingredients.

87.     Defendant thereby breached the following state warranty laws:

    a.       Code of Ala. § 7-2-313;

    b.       Alaska Stat. § 45.02.313;

    c.       A.R.S. § 47-2313;

    d.       A.C.A. § 4-2-313;

    e.       Cal. Comm. Code § 2313;

    f.       Colo. Rev. Stat. § 4-2-313;

    g.       Conn. Gen. Stat. § 42a-2-313;

    h.       6 Del. C. § 2-313;

    i.       D.C. Code § 28:2-313;

    j.       Fla. Stat. § 672.313;

    k.       O.C.G.A. § 11-2-313;

    l.       H.R.S. § 490:2-313;

    m.       Idaho Code § 28-2-313;

    n.       810 I.L.C.S. 5/2-313;

    o.       Ind. Code § 26-1-2-313;

    p.       Iowa Code § 554.2313;

q.   K.S.A. § 84-2-313;

r.   K.R.S. § 355.2-313;

s.   11 M.R.S. § 2-313;

t.   Md. Commercial Law Code Ann. § 2-313;

u.   106 Mass. Gen. Laws Ann. § 2-313;

v.   M.C.L.S. § 440.2313;

w.   Minn. Stat. § 336.2-313;

x.   Miss. Code Ann. § 75-2-313;

y.   R.S. Mo. § 400.2-313;

z.   Mont. Code Anno. § 30-2-313;

aa.   Neb. Rev. Stat. § 2-313;

bb.   Nev. Rev. Stat. Ann. § 104.2313;

cc.   R.S.A. 382-A:2-313;

dd.   N.J. Stat. Ann. § 12A:2-313;

ee.   N.M. Stat. Ann. § 55-2-313;

ff.   N.Y. U.C.C. Law § 2-313;

gg.   N.C. Gen. Stat. § 25-2-313;

hh.   N.D. Cent. Code § 41-02-30;

ii.   II. O.R.C. Ann. § 1302.26;

jj.   12A Okl. St. § 2-313;

kk.   Or. Rev. Stat. § 72-3130;

ll.   13 Pa. Rev. Stat. § 72-3130;

mm.    R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.     Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.     Va. Code Ann. § 59.1-504.2;

uu.     Wash. Rev. Code Ann. § 6A.2-313;

vv.     W. Va. Code § 46-2-313;

ww.     Wis. Stat. § 402.313;

xx.     Wyo. Stat. § 34.1-2-313.

88.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301** *et seq.*
**(On Behalf of Plaintiff and All Class Members)**

89.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

90.     Plaintiff brings this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

91.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

92.     The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

93.     Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

94.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

95.     Defendant represented in writing that the Products are "Naturally Pure."

96.     These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirm and promise that the Products are as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

97.     As alleged herein, Defendant breached the written warranty by selling consumers Products that are not "Naturally Pure" because they contain synthetic ingredients.

98.     The Products do not conform to the Defendant's written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
### (On Behalf of Plaintiff and All Class Members)

99.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

100.    Defendant are in the business of manufacturing, distributing, marketing and advertising the above listed products.

101.    Under the Uniform Commercial Code's implied warranty of merchantability, the Defendant warranted to Plaintiff and Class Members that the Products are "Naturally Pure."

102.    Defendant breached the implied warranty of merchantability in that Defendant's Products' ingredients deviate from the label and product description, and reasonable consumers expecting a product that conforms to its label would not accept the Defendant's Products if they knew that they actually contained synthetic ingredients, that are not "Naturally Pure."

103.    Within a reasonable amount of time after the Plaintiff discovered that the Products contain synthetic ingredients, Plaintiff notified the Defendant of such breach.

104.    The inability of the Defendant's Products to meet the label description was wholly due to the Defendant's fault and without Plaintiff's or Class Members' fault or neglect, and was solely due to the Defendant's manufacture and distribution of the Products to the public.

105.    As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

## SEVENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
### (On Behalf of Plaintiff and All Class Members)

106.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

107.     Defendant knew or had reason to know that the Plaintiff and other Class Members were buying its Products with the specific purpose of buying products that contained exclusively natural ingredients.

108.     Plaintiff and the other Class Members, intending to use wholly natural products, relied on the Defendant in selecting its Products to fit their specific intended use.

109.     Defendant held itself out as having particular knowledge of the Defendant's Products' ingredients.

110.     Plaintiff's and Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular purpose was reasonable given Defendant's claims and representations in its advertising, packaging and labeling concerning the Products' ingredients.

111.     Plaintiff and the other Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular use was reasonable given Defendant's particular knowledge of the Products it manufactures and distributes.

112.     As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

    (a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

    (b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with consumer protection statutes nationwide, including New York consumer protection laws;

    (c) Awarding monetary damages, including treble damages;

    (d) Awarding punitive damages;

    (e) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

    (f) Granting such other and further relief as the Court may deem just and proper.

Dated: November 6, 2017

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Adam Gonnelli, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

*Counsel for Plaintiff and the Class*

Melissa S. Weiner
**HALUNEN LAW**
1650 IDS Center
80 South Eight Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
*weiner@halunenlaw.com*

*Counsel for Plaintiff and the Class*